UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **EVANSTON INSURANCE COMPANY,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| **OPF ENTERPRISES, LLC** | § | **CIVIL ACTION NO. 4:17-CV-2048** |
| | § | |
| *Defendant.* | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Evanston Insurance Company ("Evanston"), files this insurance coverage action naming OPF Enterprises, LLC ("OPF") as Defendant, and requests the Court to enter declaratory relief in the Plaintiff's favor finding no coverage under the policies at issue and, accordingly, no duty to defend or indemnify the Defendant against a claim for damages made by Apache Corporation ("Apache").

### I.   PARTIES

1.   Plaintiff Evanston Insurance Company is an insurance company, duly organized, incorporated, and existing under the laws of the State of Illinois, authorized to issue surplus lines insurance policies in the State of Texas, with its principal place of business in the State of Illinois.

2.   Defendant OPF Enterprises, LLC is a Montana limited liability company authorized to do business in the State of Texas. OPF has been registered with the Texas Secretary of State to do business in Texas since October 20, 2011. Based upon information and belief, OPF's members are Carl Sorrell and Bryan Geary, are residents of Michigan and

Montana, respectively. OPF can be served by serving its registered agent, David Hall, at 5750 N. Sam Houston Pkwy E., Suite 109, Houston, Texas.

## II.   NATURE OF THE ACTION

3.  This is an action for declaratory judgment regarding insurance coverage pursuant to 28 U.S.C. §2201 and FED. R. CIV. P. 57, for the purpose of determining an actual controversy between the parties.

4.  OPF purchased a Specified Professions Professional Liability Insurance Policy from Evanston, Policy No. EO862992, with a policy period of 3/20/16 to 3/20/17 (the "2016 Policy") and a separate Specified Professions Professional Liability Insurance Policy from Evanston, Policy No. EO866506, with a policy period of 03/20/2017 to 03/20/2018 (the "2017 Policy") (collectively, the "Policies"). The Policies were written on the same policy form containing identical policy provisions. Both Policies were written on a Claims Made basis, which means the Policies only cover a Claim[1] first made during the applicable policy period, subject to the terms and conditions of each policy.

5.  On or about February 19, 2017—while the 2016 Policy was in effect—OPF became aware of allegations that it had sold contaminated proppant to Apache, resulting in damage to several pumps at a wellsite as well as broken valves and downtime at the well. The contaminated proppant was purchased by OPF from WanLi Resources, LLC ("WanLi") and resold by OPF to Apache. Once OPF was notified of this issue, OPF attempted to investigate the cause of the defective proppant through communications with Apache and WanLi. OPF recognized that a claim and/or lawsuit against it by Apache was likely as early as February 20, 2017, and further notified its insurance agent, Porter Insurance, of a possible claim against it by Apache through a letter dated March 1, 2017, that was titled "Potential Insurance Claim Arising

---

[1]   "Claim" is defined by the Policies to include OPF's receipt of a written demand for money damages.

from Contaminated Proppant Supplied to XXX Oil." However, Evanston was not notified of this potential claim at this time or at any time during the policy period of the 2016 Policy.

6. Instead, on or about April 3, 2017,[2] Apache sent OPF a demand letter in connection with the above-referenced conduct (the "Demand Letter"), asserting it sustained expenses and damages totaling at least $1,546,225.77, that allegedly resulted from the sale of contaminated proppant material by OPF to Apache. OPF tendered the Demand Letter to Evanston on or about April 7, 2017—the first time Evanston became aware of the incident forming the basis of the Demand Letter—for coverage, and Evanston denied the request.

7. Specifically, Evanston denied the request under the 2016 Policy because the Demand Letter, a "Claim" under the Policies, was made after the expiration of the 2016 Policy. In addition, because OPF failed to notify Evanston of the incident giving rise to the Demand Letter prior to the expiration of the 2016 Policy, OPF failed to trigger coverage that may otherwise have been afforded under the 2016 Policy despite the Claim being first made after the expiration of the 2016 Policy.

8. Evanston further denied OPF's request for coverage under the 2017 Policy, because the 2017 Policy does not provide coverage for any fact, circumstance, situation or incident of which OPF had knowledge of prior to the inception of the 2017 Policy, *i.e.* March 20, 2017, which may have led a reasonable person in OPF's position to conclude that a Claim was likely. OPF's internal communications on February 20, 2017, and its March 1, 2017 letter to its insurance agent, titled "Potential Insurance Claim Arising from Contaminated Proppant Supplied to XXX Oil," confirmed that not only a reasonable person in OPF's position would conclude prior to the inception of the 2017 Policy that a Claim by Apache against OPF arising out of the

---

[2] This date is within the policy period of the 2017 Policy.

conduct referenced in the Demand Letter was likely, but that OPF was subjectively aware that a Claim would occur.

9. Since denying OPF's request for coverage for the Demand Letter, OPF threatened to file suit if Evanston does not reverse its position. As a result, OPF seeks a declaration under the Policies that no coverage is afforded in connection with the Demand Letter.

### III. JURISDICTION AND VENUE

10. Jurisdiction of this action is based on 28 U.S.C. §1332(a), there being diversity of citizenship between the parties, including the members of OPF, a limited liability company, and an amount in controversy exceeding $75,000, exclusive of interest and costs, as the Demand Letter states Apache suffered expenses and damages totaling at least $1,546,225.77

11. Venue is proper in the Houston Division of the Southern District of Texas pursuant to 28 U.S.C. §1391(b) as the 2017 Policy was issued to OPF in Houston, Harris County, Texas.

### IV. FACTUAL BACKGROUND

**A. The Demand Letter**

12. The Demand Letter—issued by Apache on or about April 3, 2017—arises from the sale by OPF to Apache of alleged contaminated proppant. OPF purchased proppant from WanLi and resold the proppant to Apache. The Demand Letter alleges that on or about February 19, 2017, Apache discovered debris and other contaminants in the proppant, and that said proppant caused damage to at least eight (8) of Apache's contractor's frac pumps.

13. OPF was notified of the alleged contaminated proppant on February 19, 2017, and immediately began to investigate the cause of the alleged contamination. OPF recognized that a Claim against it by Apache was likely, and OPF personnel internally communicated amongst

themselves about future problems that could arise as a result of the defective proppant. These communications included a February 20, 2017 email exchange which states:

> Obviously this is not good and either I or Ryon will end up in Midland tomorrow more than likely. I am trying to document this as clearly as possible since it may come back on us from Apache. Our agreement with Wanli was for no contamination in the prop and no moisture above 1%. But we are the ones getting paid by Apache so the triangle will be they blame us – go from [sic] money – and we blame Wanli and go for money –etc. Not a good triangle at all to be in but pray this is just not the case and something from their side at the well. . . The blame has started from Apache for sure on the proppant. . .

14.     OPF notified its insurance agent, Porter Insurance, on March 1, 2017, of the potential claim of Apache through a letter titled, "Potential Insurance Claim Arising from Contaminated Proppant Supplied to XXX Oil." Notably, this March 1, 2017 letter was not provided to Evanston until after the expiration of the 2016 Policy.

15.     Because the Demand Letter constitutes a Claim first made after the expiration of the 2016 Policy, there is no coverage under the 2016 Policy. Moreover, because OPF was aware of the incident described in the Demand Letter prior to the inception of the 2017 Policy and that a Claim against it by Apache was likely, there is no coverage under the 2017 Policy.

**B.     The Policies**

16.     As noted above, the Policies were written on the same policy form containing identical policy provisions. Thus, the language cited below from the Policies is contained in both the 2016 Policy and the 2017 Policy. The Policies are made up of multiple coverage parts, the relevant parts at issue in this matter being Coverage A and Coverage C. Coverage A, Professional Liability Insurance Coverage Part for Specified Professions, provides a $1,000,000 limit of liability per Claim and a $3,000,000 aggregate limit of liability, subject to a $2,500 per Claim deductible and a $7,500 aggregate deductible under the Policies. Coverage C, General

Liability Insurance (Claims Made) Coverage Part for Specified Professions, of both Policies provides under Coverage C.1, Bodily Injury and Property Damage Liability, a $1,000,000 each occurrence limit of liability and a $100,000 damage to premises limit of liability, subject to a $2,500 per occurrence deductible.

    **i.**    **Coverage A, Professional Liability Insurance Coverage Part for Specified Professions**

17.    The Policies contain the following grant of coverage in Coverage A:

**A.**    **Coverage A – Professional Liability Coverage – Claims Made Coverage:**

The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5.A. of the Declarations, which the insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision,

By reason of:

**1.**    A Wrongful Act; or
**2.**    A Personal Injury;

In the performance of Specified Professional Services[3] rendered or that should have been rendered by the Insured or by any person for whose Wrongful Act or Personal Injury the Insured is legally responsible,

Provided:

* * *

    **b.**    Prior to the effective date of this Coverage Part the Insured had no knowledge of such Wrongful Act(s) or Personal Injury(ies) or any fact, circumstance, situation or incident, which may have led a reasonable person in the Insured's position to conclude that a Claim was likely.:

---

[3] "Specified Professional Services" is defined as "those services stated in Item 4. of the Declarations rendered for others for a fee." The services stated in Item 4. of the Declarations for Specified Professional Services are "[c]onsulting and lab services and business development."

18. The Policies also contain the following definitions in Coverage A:

**B.** **Claim** means the Insured's receipt of:

1. A written demand for money damages or remedial Specified Professional Services involving this Coverage Part, including a written demand that the Insured toll or waive a statute of limitations; or

2. The service of suit or institution of arbitration proceedings against the Insured. . .

\* \* \*

**F.** **Damages** means the monetary portion of any judgment, award or settlement, including punitive or exemplary damages where insurable, provided, however, Damages shall not include:

**1.** Multiplied portions of damages in excess of actual damages, including trebling of damages;

**2.** The cost of any modifications or changes to the Insured's security measures, procedures, software or hardware required or agreed to by the Insured to satisfy a judgment, award or settlement;

**3.** Any cost required to repair, build or modify property to comply with any award by a court, administrative order, arbitration award or any similar judgment;

**4.** Taxes, criminal or civil fines assessed against an Insured, or attorneys' fees of a party other than an Insured or other penalties imposed by law;

**5.** Sanctions;

**6.** Matters which are uninsurable under the law pursuant to which this Coverage Part shall be construed;

**7.** The return, withdrawal, reduction, restitution or payment of any fees, profits, charges or royalties for services or

       consideration and/or any expenses paid to or payable to the Insured for services or goods;

       **8.**    Any cost to correct, perform or re-perform services of a professional nature when the Insured had the capability to correct, perform or re-perform the services of a professional nature with respect to which such costs were incurred;

The insurability of such punitive damages shall be determined under the internal laws of any applicable jurisdiction most favorable to the Insured, including without limitation the jurisdiction in which the Named Insured, the Insured, the Company, this policy or such Claim is located.

\* \* \*

**N.**    **Personal Injury** means:

    **1.**    Libel, slander or defamation;
    **2.**    Invasion or infringement of the right of privacy or publicity;
    **3.**    Malicious prosecution or abuse of process; or
    **4.**    Humiliation or infliction of emotional distress;

**O.**    **Policy Period** means the period from the inception date of this Coverage Part to the Coverage Part expiration date stated in Item 3. of the Declarations, or the effective date of any earlier cancellation or termination.

\* \* \*

**S.**    **Specified Professional Services** means those services stated in Item 4. of the Declarations rendered for others for a fee.

\* \* \*

**V.**    **Wrongful Act** means a negligent act, error or omission in Specified Professional Services.

\* \* \*

19.    The Policies further contain certain language in Coverage A regarding reporting of incidents that would lead a reasonable person in the Insured's position to believe a Claim was likely:

**CLAIMS**

\* \* \*

Discovery Clause: If during the Policy Period, the Insured first becomes aware of a specific Wrongful Act, Personal Injury or offense which is reasonably expected to result in a Claim within the scope of coverage of this Coverage Part, then the Insured may provide written notice as stated in Item 11. of the Declarations to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such Wrongful Act, Personal Injury or offense shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is received by the Company. . .

    **ii.**    **Coverage C, General Liability Insurance (Claims Made) Coverage Part for Specified Professions**

20.    The Policies contain the following grant of coverage in Coverage C:

**INSURING AGREEMENTS**

    A.    **Coverage C.1 – Bodily Injury and Property Damage Liability – Claims Made Coverage:**

The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5.C. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, for Bodily Injury or Property Damage caused by an Occurrence;

Provided:

\* \* \*

        **2.**    Such Bodily Injury or Property Damage and Occurrence arises out of only those Specified Products, Goods, Operations or Premises[4] stated in Item 4. of the Declarations; and

---

[4] "Specified Products, Goods, Operations or Premises" is defined as "those services stated in Item 4. of the Declarations." The services stated in Item 4. of the Declarations for Specified Products, Goods, Operations or Premises are "[b]usiness services; all related premises and operations of the Insured."

Page - 9

    **3.**    Prior to the effective date of this Coverage Part the Insured had no knowledge of such Bodily Injury or Property Damage or Occurrence or any fact, circumstance, situation or incident which may have led a reasonable person in the Insured's position to conclude that a Claim was likely.

    \* \* \*

21.    The Policies also contain the following definitions in Coverage C:

**D.**    **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**E.**    **Claim** means the Insured's receipt of:

    **1.**    A written demand or written notice of an intention to hold the Insured responsible for:

        a.    A Bodily Injury;

        b.    A Property Damage;

        c.    A Personal and Advertising Injury;

        d.    An Occurrence; or

        e.    An offense causing a Personal and Advertising Injury

    Involving this Coverage Part;

    **2.**    The service of suit or institution of arbitration proceedings against the Insured; or

    **3.**    A written demand that the Insured toll or waive a statute of limitations.

\* \* \*

**G.**    **Damages** means the monetary portion of any judgment, award or settlement, including punitive or exemplary damages where insurable, provided, however, Damages shall not include:

    **1.**    Multiplied portions of damages in excess of actual damages, including trebling of damages;

    **2.**    The cost of any modifications or changes to the Insured's security measures, procedures, software or hardware required or agreed to by the Insured to satisfy a judgment, award or settlement;

    **3.**    Any cost required to repair, build or modify property to comply with any award by a court, administrative order, arbitration award or any similar judgment;

    **4.**    Taxes, criminal or civil fines assessed against an Insured, or attorneys' fees of a party other than an Insured or other penalties imposed by law;

    **5.**    Sanctions;

    **6.**    Matters which are uninsurable under the law pursuant to which this Coverage Part shall be construed;

    **7.**    The return, withdrawal, reduction, restitution or payment of any fees, profits, charges or royalties for services or consideration and/or any expenses paid to or payable to the Insured for services or goods;

The insurability of such punitive damages shall be determined under the internal laws of any applicable jurisdiction most favorable to the Insured, including without limitation the jurisdiction in which the Named Insured, the Insured, the Company, this policy or such Claim is located.

\* \* \*

**O.**    **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**Q.**    **Policy Period** means the period from the inception date of this Coverage Part to the Coverage Part expiration date stated in Item 3. of the Declarations, or the effective date of any earlier cancellation or termination.

\* \* \*

T. **Specified Professional Services** means those services stated in Item 4. of the Declarations.

U. **Property Damage** means:

1. Physical injury to or destruction of tangible property, including consequential loss of use thereof; or

2. Loss of use of tangible property which has not been physically injured or destroyed; provided, however, such loss of use is caused by an Occurrence;

Tangible property shall not include Electronic Data

\* \* \*

22. The Policies further contain certain exclusions in Coverage C:

A. With respect to all Coverages, this Coverage Part does not apply to any Claim:

\* \* \*

2. Based upon, arising out of, or in any way involving an act, error or omission in the performance of services of a professional nature rendered or that should have been rendered by the Insured or by any person or organization for whose acts, errors or omissions the Insured is legally responsible;

\* \* \*

23. Finally, the Policies further contain certain language in Coverage C regarding reporting of incidents that would lead a reasonable person in the Insured's position to believe a Claim was likely:

**CLAIMS**

\* \* \*

  **B.** **Discovery Clause:** If during the Policy Period, the Insured first becomes aware of a specific Occurrence or offense which is reasonably expected to result in a Claim within the scope of coverage of this Coverage Part, then the Insured may provide written notice as stated in Item 11. of the Declarations to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such Occurrence or offense shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is received by the Company. . .

V. CAUSES OF ACTION

DECLARATORY RELIEF

  24. Evanston incorporates the above paragraphs as though fully set forth herein.

  25. Evanston seeks Declaratory Relief from this Court pursuant to 28 USC §2201 and FRCP 57. A dispute has arisen as to whether coverage is afforded under the Policies for the incident described in the Demand Letter. Under the terms of the Policies, however, there is no coverage available under either the 2016 Policy or the 2017 Policy.

  26. Specifically, there is no coverage under the 2016 Policy because the Demand Letter, a "Claim" under the Policies, was made after the expiration of the 2016 Policy. In addition, because OPF failed to notify Evanston of the incident giving rise to the Demand Letter prior to the expiration of the 2016 Policy, OPF failed to trigger coverage that may otherwise have been afforded under the 2016 Policy despite the Claim being first made after the expiration of the 2016 Policy.

  27. Furthermore, there is no coverage under the 2017 Policy, because the 2017 Policy does not provide coverage for any fact, circumstance, situation or incident of which OPF had knowledge of prior to the inception of the 2017 Policy, *i.e.* March 20, 2017, which may have led a reasonable person in OPF's position to conclude that a Claim was likely. OPF's internal communications on February 20, 2017, and its March 1, 2017 letter to its insurance agent, titled

"Potential Insurance Claim Arising from Contaminated Proppant Supplied to XXX Oil," confirmed that not only a reasonable person in OPF's position would conclude that a Claim by Apache against OPF arising out of the conduct referenced in the Demand Letter was likely, but that OPF was subjectively aware that a Claim would occur.

    28.    Accordingly, Evanston requests this Court to enter the following declarations:

(i)     Evanston has no duty to defend or indemnify OPF under the 2016 Policy for any Claim that could arise in connection with the Demand Letter; and

(ii)     Evanston has no duty to defend or indemnify OPF under the 2017 Policy for any Claim that could arise in connection with the Demand Letter;

## VI.   CONDITIONS PRECEDENT

    30.    All conditions precedent to Evanston obtaining declaratory relief have been performed or have occurred.

## VII.   CONCLUSION

FOR THESE REASONS, Evanston requests that Defendant be cited to appear and answer, and that upon final trial, Evanston have the following:

A.     A declaration that Evanston has no duty to defend or indemnify OPF under the 2016 Policy for any Claim that could arise in connection with the Demand Letter;

B.     A declaration that Evanston has no duty to defend or indemnify OPF under the 2017 Policy for any Claim that could arise in connection with the Demand Letter;

C.     Costs of suit; and

D.     Such other and further relief to which Evanston may be justly entitled.

Respectfully submitted,

CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY

By: _____/s/ Christine Kirchner_____
Christine Kirchner – Lead Counsel
State Bar No. 00784403
c.kirchner@chamberlainlaw.com
Cade W. White
State Bar No. 24051516
cade.white@chamberlainlaw.com
1200 Smith Street, Suite 1400
Houston, Texas 77002
Telephone: (713) 658-1818
Telecopier: (713) 658-2553

ATTORNEY FOR PLAINTIFF EVANSTON INSURANCE COMPANY

2441691.1