IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EVANSTON INSURANCE COMPANY, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 4:17-CV-2048 |
| OPF ENTERPRISES, LLC, | § § § | |
| *Defendant.* | § | |

## MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This case involves an insurance coverage dispute. Plaintiff Evanston Insurance Company ("Plaintiff" or "Evanston") filed this suit on July 5, 2017 under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a judgment that it has no duty to defend or indemnify Defendant OPF Enterprises, LLC ("Defendant" or "OPF") under insurance policies it issued in 2016 and 2017. ECF No. 1.[1] Pending before the Court are Evanston's and OPF's cross-motions for summary judgment. ECF Nos. 43, 44.[2] Based on a careful review of the pleadings, motions, exhibits, and applicable law, the Court DENIES Evanston's motion for summary judgment and GRANTS OPF's motion for summary judgment.

---

[1] The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1).

[2] On July 26, 2019, the parties consented to have this Court conduct all proceedings pursuant to 28 U.S.C. § 636(c). ECF No. 50.

## I. BACKGROUND

The sole disputed issue in this case is whether OPF provided notice sufficient to trigger coverage under the insurance policy in effect in 2016. The essential facts are not disputed. The Parties agree that this dispute can be decided on summary judgment as a matter of contract interpretation. The undisputed facts are as follows:

### A. The Insurance Policies

Evanston is an Illinois-based insurance company authorized to issue surplus lines insurance policies in Texas, and OPF is a limited liability company authorized to do business in Texas. ECF No. 1 ¶¶ 1-2; ECF No. 5 ¶¶ 1-2.

Evanston issued two identical professional liability insurance policies to OPF: (1) Policy No. EO862992 for coverage from March 20, 2016 to March 20, 2017 ("2016 Policy"); and (2) Policy No. EO866506 for coverage from March 20, 2017 to March 20, 2018 ("2017 Policy") (collectively, "the Policies"). ECF No. 43, Exs. A & B. Each policy contains general liability and professional liability insurance coverage.

#### 1. Coverage A – Professional Liability Coverage

Coverage A of each policy provides "Claims Made Coverage"[3] for damages caused by a wrongful act or personal injury during the performance of specified

---

[3] OPF disputes whether the Policies can be characterized as claims-made, rather than occurrence, policies. *See* ECF No. 46 at 7-8.

professional services, provided that, prior to the policy period,

> the Insured had no knowledge of such Wrongful Act(s) or Personal Injur(ies) or any fact, circumstance, situation, or incident, which may have led a reasonable person in the Insured's position to conclude that a Claim was likely.

*Id.*, Ex. A at 15 & Ex. B at 15. Coverage A requires Evanston to pay damages resulting from

> a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision.

*Id.*[4] In other words, claims generally must be made against OPF during the policy period to be covered.

Each policy also contains a "Discovery Clause," providing coverage for claims made *after* the policy period, *if* OPF provides *written notice* to Evanston *during* the policy period of an event reasonably expected to result in a claim:

> **Discovery Clause:** If during the Policy Period, the Insured first becomes aware of a specific Wrongful Act, Personal Injury or offense which is reasonably expected to result in a Claim within the scope of coverage of this Coverage Part, then the Insured ***may provide written notice as stated in Item 11.*** of the Declarations to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such Wrongful Act, Personal Injury or offense shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is received by the Company.

---

[4] "Claim" under Coverage A is defined, in relevant part, as a written demand for money damages. ECF No. 43, Ex. A at 16 & Ex. B at 16.

*Id.*, Ex. A at 23 & Ex. B at 23 (emphasis added). It further provides that written notice is a condition precedent to coverage. *Id.* Item 11 lists an email, fax number, and address of Markel Service, Incorporated[5] through which OPF must notify Evanston of claims, potential claims, and loss notices. *Id.*, Ex. A. at 5 & Ex. B at 5.

### 2. Coverage C.1. – Bodily Injury and Property Damage Liability

Coverage C.1. of each policy provides "Claims Made Coverage" for bodily injury or property damage caused by an occurrence[6] if, prior to the policy period, OPF had no knowledge of the incident "which may have led a reasonable person in the Insured's position to conclude that a Claim was likely." ECF No. 43, Ex. A at 27 & Ex. B at 27.[7] As with Coverage A, Coverage C.1. requires Evanston to pay damages resulting from

> a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision."

*Id.*, Ex. A at 27 & Ex. B at 27. Coverage C.1. contains the same Discovery Clause quoted above, providing coverage for claims made after the policy period if OPF

---

[5] Markel Corporation acts as an underwriter for Evanston. *See* ECF No. 43, Ex. G at 14. Markel Service, Incorporated and Evanston are subsidiaries of Markel Corporation. *See id.* at 42.

[6] "Occurrence" under Coverage C is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.*, Ex. A at 31 & Ex. B at 31.

[7] "Claim" under Coverage C is defined, in relevant part, as "the Insured's receipt of . . . [a] written demand or written notice of an intention to hold the Insured responsible for" bodily injury, property damage, or an occurrence. *Id.*, Ex. A at 29 & Ex. B at 29.

4

provides written notice of the underlying occurrence to Evanston during the policy period. *Id.*, Ex. A at 38 & Ex. B at 38.

**B. The Underlying Claim**

In January 2017, OPF purchased 5 million pounds of ceramic proppant[8] from WanLi Resources ("WanLi") for resale to Apache Corporation ("Apache") to use at a well site in western Texas. *Id.*, Exs. D-G. During the 2016 Policy period, on February 19, 2017, OPF received notice of this potential claim when Apache first notified OPF that it had found large chunks of material in the proppant which had damaged several pumps and valves, resulting in downtime at the well site. *Id.*, Ex. H.

During the 2016 Policy period, on March 1, 2017, OPF notified its insurance agent, Porter Insurance Agency, Inc. ("Porter"), in writing of the event. ECF No. 43, Ex. C. Porter then forwarded the notice to AmWINS Brokerage of Texas, LLC ("AmWINS"), on March 3, 2017 ("March 3 Email"), stating "[t]his is for your information only at this time, since there is no claim demand made against the insured." *Id.*, Ex. M; ECF No. 44, Ex. 2. AmWINS did not send the notice it received from Porter to Evanston. ECF No 44 at 12 ("AmWINS apparently did not" provide notice); ECF No. 43 (policy requires actual not constructive notice, implying that

---

[8] Proppant is a solid material used in oil extraction and is "designed to keep an induced hydraulic fracture open, during or following a fracturing treatment." ECF No. 43 at 2 n.1.

Evanston did not receive actual notice from AmWINS). In early April 2017, during the 2017 Policy period, Apache sent OPF a demand letter ("Demand Letter") for approximately $1.5 million in damages related to the contaminated proppant, which Porter forwarded to AmWINS on April 6, 2017 and AmWINS forwarded to Evanston on April 7, 2017. ECF No. 43, Ex. P.

### C. Evanston Disputes It Received Notice Sufficient to Trigger Notice Under the 2016 Policy

Evanston filed suit seeking a declaratory judgment that it has no duty to defend or indemnify OPF for the sale of contaminated proppant to Apache. ECF No. 1. Evanston asserts that coverage is precluded under the 2016 Policy because no claim was made against OPF during the 2016 Policy period. *Id.* ¶ 7. Evanston also asserts that OPF failed to notify it of the incident under the Discovery Clause, which would have triggered coverage for related claims made against OPF after expiration of the policy period. *Id.* Evanston further asserts that coverage is precluded under the 2017 Policy because OPF had knowledge of the underlying incident prior to the policy period. *Id.* ¶ 8.[9] OPF claims that it provided notice of the potential claim to AmWINS, Evanston's agent, during the 2016 Policy period, which is imputed to Evanston and satisfies the requirement of notice to Evanston under the contract. ECF

---

[9] Significantly, Evanston does not argue that OPF's notice to AmWINS of the Demand Letter, which AmWINS forwarded to Evanston, did not comply with notice under in Item 11, which required written notice to Evanston and not the agent, as Evanston argues with respect to the notice of the potential claim.

No. 44 at 3.

The parties filed cross-motions for summary judgment. ECF Nos. 43, 44.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is appropriate only if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (quoting FED. R. CIV. P. 56(a)). The movant bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009). If the movant fails to meet this initial burden, the motion for summary judgment must be denied, regardless of the nonmoving party's response. *Celotex*, 477 U.S. at 325; *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008). If the movant carries its initial burden, the burden shifts to the nonmoving party to show why summary judgment should not be granted. *Celotex*, 477 U.S. at 323-24; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). On a motion for summary judgment, "a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan*, 572 U.S. at 657 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

When parties file cross-motions for summary judgment, the Court must "review 'each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'" *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)); *accord Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004) ("Cross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.").

### III. THE MARCH 3 EMAIL TO AMWINS CONSTITUTES NOTICE TO EVANSTON OF THE POTENTIAL CLAIM UNDER THE 2016 POLICY'S DISCOVERY CLAUSE

The only dispute between the Parties is whether OPF sufficiently notified Evanston of the contaminated proppant incident during the 2016 Policy period, such that coverage could be afforded under the Discovery Clause for the claim subsequently made against OPF. Arguing that AmWINS was Evanston's agent under a Producer Agreement between the companies, OPF asserts that the March 3 Email from Porter to AmWINS explaining the incident constituted notice to Evanston. ECF No. 44 at 10-13; ECF No. 46 at 3-4. Evanston argues the March 3 Email does not constitute notice because the Policy only allows direct notice to

Evanston as described in Item 11, and, in any event, AmWINS was not authorized to accept notice on its behalf. ECF No. 43 at 18-22. The Court agrees with OPF.

**A. The Language of the 2016 Policy Does Not Require Notice Be Given to Evanston Directly**

In evaluating the sufficiency of notice through an agent, the court must first look to the language of the insurance contract. *Berkley Reg'l Ins. Co. v. Philadelphia Indem. Ins. Co.*, 600 F. App'x 230, 233 (5th Cir. 2015). Under Texas law,[10] the general rules of contract interpretation apply to insurance policies. *Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.*, 359 F.3d 770, 773 (5th Cir. 2004). "A court faced with a coverage dispute must give effect to the parties' intentions as expressed by the policy language." *Gemini Ins. Co. v. Hayssam Allaov*, No. 10-CV-3413, 2011 WL 3323120, at *6 (S.D. Tex. Aug. 2, 2011). If the language of the policy is not ambiguous, meaning it is not subject to more than one reasonable interpretation, "the court's duty is to enforce the policy according to its plain meaning." *Valmont Energy Steel, Inc.*, 359 F.3d at 773; *see also Berkley Reg'l Ins. Co.*, 600 F. App'x at 233. "The fact that the parties disagree as to coverage does not create an ambiguity[.]" *Valmont Energy Steel, Inc.*, 359 F.3d at 773 (quotations omitted).

Here, notice under the Discovery Clause is unambiguous. It states that, if OPF

---

[10] The parties agree that Texas law applies. *See* ECF No. 43 at 3; ECF No. 44 at 6.

becomes aware of an incident that might lead to a claim during the policy period, it "*may* provide written notice as stated in Item 11. of the Declarations to the Company" containing certain information about the incident and that, "[i]f such written notice is received by the Company during the Policy Period," any subsequent claim would be covered. ECF No. 43, Ex. A at 23, 38 (emphasis added). Although Item 11 states thst notice must be provided in a certain manner, *see id.*, Ex. 1 at 5, the plain meaning of the Discovery Clause makes notice through Item 11 optional.[11] The Discovery Clause, therefore, does not preclude notice through an agent. *Cf. Berkley Reg'l Ins. Co.*, 600 F. App'x at 233 (finding the plain meaning of a policy requiring the insured to "see to it" that the insurance company be notified of a claim allowed indirect notice).

### B. AmWINS Was Evanston's Agent and Had Authority to Accept Notice on Evanston's Behalf Under the Producer Agreement

Given that the 2016 Policy contemplates indirect notice to Evanston, the Court must next consider whether AmWINS was Evanston's agent and, if so, whether receiving notice was within the scope of the agency relationship. *See id.*

---

[11] This is different than the language in *Federal Insurance Co. v. CompUSA, Inc.* cited by Evanston in its briefs. *See* 239 F. Supp. 2d 612 (N.D. Tex. 2002), *aff'd*, 319 F.3d 746 (5th Cir. 2003). The notice provision in that policy stated that the "Insureds *shall*, as a condition precedent to exercising their rights . . . , give to the Company written notice" of a claim made against them and required that notice be given in writing to a certain address. *Id.* at 615 (emphasis added) (quotations omitted). Here, the notice language in the Discovery Clause is permissive. In addition, the court in *CompUSA* was deciding whether actual knowledge by the insurer could replace the policy's notice provision, *see id.* at 615-17, not whether notice to the insurer's agent could suffice under the terms of the policy.

Generally, an insurance broker is considered an agent of the insured, and "'if the insured reports a claim to the broker, but the broker fails to report it to the insurer, the insured is not relieved of his notice obligations.'" *Id.* (quoting *Duzich v. Marine Office of Am. Corp.*, 980 S.W.2d 857, 865 (Tex. App. 1998)). However, there are circumstances under Texas law in which a broker can act as a dual agent for both the insured and the insurer. *Id.*; *Monumental Life Ins. Co. v. Hayes-Jenkins*, 403 F.3d 304, 318 (5th Cir. 2005); *see, e,g.*, *Duzich*, 980 S.W.2d at 865 (recognizing "an insurance company may be estopped to deny that . . . a broker is its own agent when [the broker] has authority to perform various functions on insurer's behalf" and finding a fact question as to whether the broker had apparent authority to receive notice of claims). An agreement between a broker and an insurance company can create dual agency. *See Berkley Reg'l Ins. Co.*, 600 F. App'x at 234-35. The Parties do not dispute that AmWINS was a surplus lines insurance broker during the relevant time. ECF No. 43 at 2; ECF No. 44 at 6. Evanston contends that AmWINS was OPF's broker, but OPF contends that AmWINS was Evanston's agent. Regardless of whether AmWINS was OPF's broker, the critical inquiry is whether it was Evanston's agent for the purpose of receiving notice of a potential claim.

The Producer Agreement here creates an agency relationship between

AmWINS and Evanston.[12] It gives AmWINS binding authority to: (1) "receive and accept proposals for insurance on behalf of the Insurers [Evanston] for which the Company [Markel] acts as underwriting manager;" (2) "effect, issue, countersign and deliver such policies" as authorized by the Company; (3) "collect, receive and give receipts for premiums;"[13] and (4) "cancel or non-renew such policies" in accordance with the Company's policies or instructions. ECF No. 43, Ex. Q at 14. As part of the agreement, AmWINS was required to represent it "has a valid license . . . *to act as an agent*, broker, or producer with respect to all classes of insurance that [it] places with the Company." *Id.* at 3 (emphasis added). Evanston even concedes AmWINS was its agent under the Producer Agreement, at least in the limited capacity of brokering policies. ECF No. 45 at 4 n.3, 9. The Court, therefore, finds that AmWINS was Evanston's agent.[14]

The Court must next decide the scope of this relationship, as notice to an agent

---

[12] The Producer Agreement is between AmWINS and "the affiliates of Markel Corporation." ECF No. 43, Ex. G at 3. Neither party distinguishes between Markel and Evanston when discussing this Agreement and given that Evanston is wholly owned by Markel Corporation, the Court finds it appropriate to treat them interchangeably. *See id.* at 42.

[13] AmWINS' authority to collect premiums on behalf of Evanston is further evidence of agency. *See Maintain, Inc. v. Maxson-Mahoney-Turner, Inc.*, 698 S.W.2d 469, 472 (Tex. App. 1985) ("An insurance agent can act as the agent of . . . the insurer by collecting the premium and delivering the policy for the carrier[.]").

[14] The provision in the Producer Agreement stating AmWINS was an independent contractor, rather than an agent, is immaterial to the question of whether an agency relationship existed. ECF No. 43, Ex. G at 3; *see, e.g.*, *Berkley Reg'l Ins. Co.*, 600 F. App'x at 234-35 (finding agency relationship possible despite a clause in agency agreement stating the broker was not an agent of insurer).

can only be imputed to the principal when receiving notice is within the scope of the agent's authority. *Berkley Reg'l Ins. Co.*, 600 F. App'x at 235 ("In Texas, it is 'well settled that if an agent's acts are within the scope of his authority, then notice to the agent of matters over which the agent has authority is deemed notice to the principal.'") (quoting *Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enters.*, 625 S.W.2d 295, 300 (Tex. 1981)). Thus, "before notice or knowledge of an agent is imputed to his principal it must first be shown that the authority of such agent extended to the very matter about which and concerning which such knowledge or notice was acquired." *Id.* (quotations and alterations omitted).

Here, receiving notice on behalf of Evanston was within the scope of AmWINS' authority. The Producer Agreement provides, in relevant part, that AmWINS must "immediately notify the Company of all claims, suits, and notices" it receives. ECF No. 43, Ex. G at 5. Evanston recognizes this provision creates "a contractual obligation to notify Evanston of a Claim," but argues it "does not confer authority on AmWINS to accept notice of a *potential* claim on behalf of Evanston." ECF No. 43 at 21. In other words, Evanston argues that, since the March 3 Email to AmWINS pertained to a potential claim, AmWINS did not have the obligation to forward the information to Evanston or the authority to accept notice on Evanston's behalf. *See id.* Evanston ignores AmWINS' contractual obligation to notify

Evanston of *notices* it receives.[15] Thus, AmWINS had actual authority to receive notices under the Producer Agreement and an obligation to forward them to Evanston.

The Agreement does not define the term "notice."[16] When terms are not defined in a contract, they "must be given their plain and ordinary meaning unless there is evidence that the parties intended otherwise." *Crose v. Humana Ins. Co.*, 823 F.3d 344, 348 (5th Cir. 2016); *see AIG Specialty Ins. Co. v. Stoller Enters., Inc.*, No. 16-CV-26, 2017 WL 541533, at *11 (S.D. Tex. Feb. 7, 2017) (using dictionary to define terms in Texas insurance contract). The plain meaning of "notice," as defined by Merriam-Webster's Dictionary, is "warning or intimation of something." *Notice*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/notice (last visited Jan. 30, 2020).[17] The March 3 Email was a warning that the contaminated proppant incident occurred and could eventually

---

[15] Evanston also points to language in the Producer Agreement stating AmWINS has "no authority to *handle or adjust claims* on behalf of the Company or any Insurer." ECF No. 43, Ex. G at 5 (emphasis added). This, however, has no bearing on the issue in dispute. OPF does not claim that AmWINS' had the authority to handle or adjust this potential claim or that this dispute involves AmWINS' handling or adjustment of the potential claim.

[16] The Producer Agreement does explain how "notice by mail" must be given. ECF No. 43, Ex. G at 7. However, the provision clearly applies to communications between AmWINS and Markel, rather than AmWINS and the insured.

[17] *See also Mid-Continent Cas. Co. v. Kipp Flores Architects, L.L.C.*, 602 F. App'x 985, 993 (5th Cir. 2015) (noting the Oxford English Dictionary defines "notice" broadly as "the act of imparting information" or "something which imparts information") (quotations omitted).

require coverage under the Policies, and thus it constitutes a "notice" that AmWINS had the contractual obligation to forward to Evanston.

Evanston argues that because the March 3 Email from Porter to AmWINS began with "for your information only at this time," it was merely notice to OPF's own agent and did not trigger AmWINS' obligation as Evanston's agent to forward the notice to Evanston. ECF No. 43 at 21. Evanston's argument is without merit. The notice to AmWINS does not say this is for your information only and do not tell Evanston. It also does not say, since this is only a potential claim, we have no obligation to notify Evanston. Instead, it plainly states that Porter is providing notice to AmWINS of the potential claim. Once AmWINS received such notice, it was contractually obligated to pass that notice on to Evanston under the Producer Agreement. The fact that it did not is irrelevant as to notice to Evanston. Notice to its agent within the scope of AmWINS' authority is implied to Evanston.

Evanston argues that an obligation to forward notices to it does not equate to the authority to accept notice on its behalf. ECF No. 48 at 5. However, to relay the notice to Evanston, AmWINS would first have to receive it. Receiving notice is not the same as formally accepting notice on Evanston's behalf. To the extent AmWINS had to accept the notice to forward it, accepting notice is thus implied in AmWINS' authority. *See Berkley Reg'l Ins. Co.*, 600 F. App'x at 235 ("'Implied authority is the authority to do whatever is reasonably necessary and proper to carry out the agent's

express powers.'") (quoting *Crooks v. M1 Real Estate Partners, Ltd.*, 238 S.W.3d 474, 483 (Tex. App. 2007)). The March 3 Email from Porter to AmWINS, therefore, constituted notice to Evanston under the 2016 Policy's Discovery Clause. *See, e.g.*, *Minter v. Great Am. Ins. Co. of N.Y.*, 423 F.3d 460, 463, 472 (5th Cir. 2005) (finding, as a matter of law, that notice to insurer's agent constituted notice to insurer based in part on authority provided by agency agreement).

Accordingly, the claim later made against OPF—Apache's Demand Letter—is "deemed . . . to have been first made" on March 3, 2017, during the 2016 Policy period. ECF No. 43, Ex. A at 23, 38. Coverage of the contaminated proppant incident cannot be denied based on lack of notice.

## IV. CONCLUSION

Therefore, Evanston's motion for summary judgment, ECF No. 43, is **DENIED**, and OPF's motion for summary judgment, ECF No. 44, is **GRANTED**.

Signed at Houston, Texas, on February 13, 2020.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**